IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laymen's Retreat League,                    :
                          Petitioner         :
                                             :
            v.                               :
                                             :
Unemployment Compensation                    :
Board of Review,                             :    No. 777 C.D. 2014
                          Respondent         :    Submitted: March 27, 2015


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: July 31, 2015


        Laymen's Retreat League (Employer) petitions this Court for review of
the Unemployment Compensation (UC) Board of Review's (UCBR) April 8, 2014
order reversing the Referee's decision denying UC benefits under Section 402(e) of
the UC Law (Law).[1]  Employer presents two issues for this Court's review: (1)
whether the UCBR's credibility determinations were against the weight of the
evidence; and (2) whether the UCBR's finding of animosity between Sally J. Tygh
(Claimant) and two of her co-workers was against the weight of the evidence.  After
review, we affirm.

        Claimant was employed full-time as a dining room supervisor with
Employer from January 1, 1991 until September 15, 2012.  On September 15, 2012,

_____

        [1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §
802(e) (relating to discharge for willful misconduct).

Claimant's co-workers, Monica and Alexis Luminella (Luminella sisters), claimed they saw Claimant in the break room with her hands in one of their purses. When the Luminella sisters walked into the break room, Claimant heard the door open, turned to look, and asked them if they had seen a busboy named Cole Fanelli (Cole). Neither of the Luminella sisters said anything to Claimant about the purse, nor did they respond to Claimant's query as to Cole's whereabouts. Nothing was taken from the purse. Alexis Luminella reported the alleged incident to the manager on duty, who reported it to her supervisor, and it went up the chain of command to Employer's President James A. Fitzsimmons (Fitzsimmons). When confronted by Employer, Claimant denied having her hands in the purse. Claimant explained that she was in the break room looking for Cole because she was going to ask him to put the jellies out. The police were called, and an investigation was conducted, but Claimant was not charged with any criminal offense. Notwithstanding, Fitzsimmons notified Claimant that she was suspended with pay pending a further investigation. On September 22, 2012, Fitzsimmons advised Claimant that her employment was terminated and Claimant expressed that Employer's action was unfair. Employer notified Claimant by registered letter that her employment was ended because Employer believed that she was in another employee's purse.

Claimant applied for UC benefits. On December 20, 2012, the Harrisburg Overflow UC Service Center determined that Claimant was eligible for UC benefits under Section 402(e) of the Law. Employer appealed and a Referee hearing was held on February 21, 2013. Claimant did not attend. On February 22, 2013, the Referee reversed the UC Service Center's determination. Claimant appealed to the UCBR. The UCBR remanded the case to the Referee for another hearing to determine whether Claimant had good cause for her non-appearance at the first hearing, and to take evidence on the merits. On June 4, 2013, the UCBR

2

determined that Claimant did not have good cause for her absence from the first hearing and, based solely on the first hearing, affirmed the Referee's decision.

On June 19, 2013, Claimant made a request for reconsideration. On July 15, 2013, the UCBR denied Claimant's reconsideration request because she had filed an appeal in Commonwealth Court. On November 19, 2013, the UCBR applied to this Court for remission of the appeal. On November 22, 2013, this Court granted the UCBR's request and remanded the matter to the UCBR to reconsider its June 4, 2013 decision based on the entire record.[2] On April 8, 2014, the UCBR reversed the Referee's decision and determined that Claimant was eligible for UC benefits under Section 402(e) of the Law. Employer appealed to this Court.[3]

> Initially,
>
> Section 402(e) of the Law provides that an employee is ineligible for unemployment compensation benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in an unemployment compensation case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's

---

[2] Upon further review, the [UCBR] determined that, although [C]laimant had not asked for a continuance in the proper manner due to her lack of legal training, she did not intentionally refuse to attend the Referee's hearing, but rather was merely exercising her due process right to counsel at the hearing, albeit inartfully so, such that she did have proper cause for her nonappearance.

UCBR Dec. at 3.

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

3

interest or a disregard of the employee's duties and obligations to the employer.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747-48 n.4 (Pa. Cmwlth. 2000) (citation omitted). "When an employee is discharged for violating a work rule, the employer must prove the existence of the rule and the fact of its violation." *Lewis v. Unemployment Comp. Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012). "Once the employer has met its initial burden, the burden then shifts to the claimant to show either that the rule is unreasonable or that claimant had good cause for violating the rule." *Cnty. of Luzerne v. Unemployment Comp. Bd. of Review*, 611 A.2d 1335, 1338 (Pa. Cmwlth. 1992).

Employer argues that "the [UCBR's] credibility determination in favor of Claimant as to Claimant's reasons for being in the break room was not supported by substantial evidence." Claimant Br. at 14 (bold emphasis and uppercase omitted).

The law is well established that:

> [T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. **It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made.** Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted; emphasis added). This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

4

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

Here, the UCBR found as a fact: "[C]laimant explained that she was in the break room to look out the window at the area below where the young workers gathered to smoke because she was going to ask the busboy to put the jell[ies] out." UCBR Dec. at 2, Finding of Fact (FOF) 10.

When asked what she said to Fitzsimmons during Employer's investigation into the handbag incident, Claimant testified at the remand hearing as follows:

> I told him that I was at work, I was out in the dining room. I had got to work early that morning, a little earlier than normal. The Luminella girls were out in the dining room with me. We were the only three people in the dining room at that time. A retreatant [sic] came up to me and asked me if there were jellies. The jellies that sit next to the toasters weren't put out yet. I was working on one side of the dining [room] where the toasters are, the girls were working on the other side of the dining room. So I stepped into the kitchen, I was right by the kitchen door to see if I saw one of the boys that I had seen earlier tha[t] morning. His name is [Cole]. I didn't see anyone in the kitchen at that time so **I walked to where our break room is and I looked in the break room thinking somebody would be in there to put the jellies out. There was no one in there, so I walked over to the window because there's a stairwell outside that sometimes the kids will go out and they'll smoke out there. So I walked over to the window and I looked out the window and saw no one.** And then I heard the girls -- well I didn't know it was the girls, but I heard the door open behind me. And I turned around and the two Luminella sisters were walking into the break room. And I turned to them and I said have you seen Cole, and both girls said no. And so I walked out of the break room, the girls said nothing else to me, and I went back through the hallway back into the kitchen, and I did see Cole at the dish machine. And I said to him at that time, I said we need to put the jellies out. And he said that [the other supervisor] Ashley Hope [(Hope)] had just put them out.

Reproduced Record (R.R.) at 91a (emphasis added). On cross-examination, Employer's counsel questioned Claimant as follows:

> E[mployer's] L[awyer]  And why would you go in the break room to look for Cole?
>
> C[laimant]  Because when, a lot of times when the kids had finished – I call them kids -- but when they had, the young people had finished with their jobs they would go into the break room before breakfast or a meal would start and they would kind of congregate and like talk in there. So that was the first idea I had, maybe he had walked back to the break room.
>
> EL  And when you opened the door and saw that he wasn't there why didn't you just leave at that point?
>
> C  Because I know that if they're not in the break room sometimes they sit out at the stairwell. There's like a low stairwell, steps come down, goes across, then it comes back up into the kitchen area, and they'll go out there and smoke and hang out and talk, so I thought perhaps he would be out there.
>
> EL  Why wouldn't you just go out to the stairwell to see if he was there?
>
> C  Because I was already in the break room so I just walked over to look out the window that was right close to where the stairwell was[].

R.R. at 99a-100a. The above testimony is relevant evidence upon which a reasonable mind could conclude that Claimant went into the break room to look for Cole. Accordingly, the UCBR's finding of fact is supported by substantial evidence.

Employer next argues that "the [UCBR's] finding of animosity between Claimant and the Luminella sisters, and that the Luminella sisters had motive to place Claimant in a bad light was not supported by substantial evidence." Claimant Br. at 17 (bold emphasis and uppercase omitted). The UCBR opined: "[C]laimant testified that there was animosity between her and the [Luminella] sisters for several incidents

6

that had previously occurred, and the [UCBR] credits this testimony." UCBR Dec. at 4. The UCBR concluded:

> Given that [C]laimant has consistently denied the allegations, and provided the more reasonable explanation for her presence in the break room on the day in question, and given that the only eye-witnesses to the alleged misconduct were **sisters who had a motive to place [C]laimant in a bad light**, the [UCBR] is constrained to find and conclude that [E]mployer did not bear its burden of proving willful misconduct as [a] matter of law in this case.

*Id.* (emphasis added).

At the remand hearing, Claimant's counsel presented a letter Claimant wrote to Fitzsimmons regarding why she believed the Luminella sisters had animosity towards her. In the letter Claimant described an incident that occurred on June 12, 2012, wherein, Hope had complained to their supervisor about Claimant leaving work early. The supervisor called Claimant who voluntarily returned to work. When Claimant left work Hope and the Luminella sisters were outside smoking, and when she returned, they were still outside smoking. Claimant and Hope went back and forth about why Hope made the supervisor call Claimant when the work was already completed, and eventually Hope and the Luminella sisters got in Hope's car and drove away. *See* Ex. CB-1. The letter continued regarding Claimant's correction of the three girls' prior use of foul language. The letter expressly stated: "**I think Ashley [Hope], Monica [Luminella] and Alexis [Luminella] have animosity towards me because of my constant correction of [their] bad language around retreatants [sic] and co-workers**." Ex. CB-1 at 2 (emphasis added). The letter was accepted into evidence.

In reference to the letter, Claimant's counsel questioned Claimant as follows:

> C[laimant's] L[awyer] Now the June, 2012 incident when you wrote this letter that wasn't the first time you had

7

mentioned to [] Fitzsimmons or anybody at [Employer] about the issue that occurred on June 12th, correct?

C[laimant]   Correct.

CL   And was there also an issue as you stated in the letter where there was an accusation that you had left and not done your work, that you had gone home early?

C    That's correct.

CL   And were the Luminella sisters part of the accusation?

C    They were.

R.R. at 105a.  During recross-examination, Employer's counsel questioned Claimant about the fact that Hope was the one who complained about her during the June 12th incident, not the Luminella sisters and Claimant testified as follows:

E[mployer's] L[awyer]  So if I understand your testimony correctly, [Hope] is the one who complained?

C[laimant]   [Hope] called [Employer's supervisor] Jim Hall.  But when I got, when I saw the two glasses I went back out on the loading dock and I said to the girls, I said there is nothing to be done here, I don't know what all this is about, I don't really understand this.  So the girls at that point were getting ready to leave, they were - walking toward [Hope's] car.  [Hope] said, [sic] I said [Hope], what is going on here?  [Hope] used some profanities and said I'm tired of doing your job.  And the girls [the Luminella sisters] just kind of snickered and laughed about it and didn't say anything.  And they all got in [Hope's] car and they left.

EL   So [Claimant], you don't know that the Luminella sisters complained?

C   Well I don't, I don't know that they complained but they sure didn't say anything to defend the situation.  They just stood there and snickered about it.

EL   All right.  So they were there when you were having a conversation with [Hope] . . .

C  Right, and . . .

EL  . . . who was the one that complained?

C  . . . and the girls are this little tight group of girls. They're very good friends.  And so I would assume that, you know, [Hope] and them got together and decided this [is] what they were -- I assumed they got together . . .

EL  All right.  So you're assuming that somehow they were involved because . . .

C  Yes.

EL  . . .  they're friends with [Hope]?

C  Right.

EL  You don't know that they were involved?

C  I -- well **let's put it this way, I would say that I do know that they were involved in it because [of] the way they conducted themselves when I went back over there.**

EL  So you know they were involved because they got into [Hope's] car and they're friends with [Hope]?

C  **No. I know they're involved by their mannerisms when I went back over there, how you have just a knowledge of knowing when people are back-stabbing you.**

EL  **Now do you think that you have some issues with the Luminella sisters that you think that maybe they don't like you**?

C  Do I think that now?

EL  Yes.

C  Of course I think that now.

EL  Well, no, back at that time.

C  **Back at that time, yeah, I think there was a lot going on behind my back at that time.**

R.R. at 106a-108a (emphasis added).

9

Reviewing the letter and the above testimony in the light most favorable to Claimant as the prevailing party, and giving Claimant the benefit of any inferences which can logically and reasonably be drawn from the evidence as we must, the letter and the testimony is relevant evidence upon which a reasonable mind could conclude that there was animosity between Claimant and the Luminella sisters. Accordingly, because there was substantial evidence to support the UCBR's conclusion of animosity, we will not disturb the UCBR's credibility determination.

For all of the above reasons, the UCBR's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laymen's Retreat League,                    :
                             Petitioner     :
                                            :
             v.                             :
                                            :
Unemployment Compensation                   :
Board of Review,                            :        No. 777 C.D. 2014
                          Respondent        :


## O R D E R

AND NOW, this 31st day of July, 2015, the Unemployment Compensation Board of Review's April 8, 2014 order is affirmed.


                                    _____
                                    ANNE E. COVEY, Judge