# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda L. Staudenmayer,                         :
                            Petitioner           :
                                                 :
            v.                                    :     No. 174 C.D. 2016
                                                 :     Submitted:  June 24, 2016
Unemployment Compensation                        :
Board of Review,                                 :
                            Respondent           :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  September 30, 2016**

Linda L. Staudenmayer (Claimant), proceeding pro se, petitions for review of the December 11, 2015, Order of the Unemployment Compensation Board of Review (Board) that affirmed a Referee's (Referee) Decision finding Claimant ineligible for benefits under Section 402(e) of the Unemployment Compensation Law[1] (Law).  The Board found that Claimant's failure to return to work after her medical leave of absence had expired or to contact True Friends Animal Welfare

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's unemployment is due to discharge or temporary suspension from work for willful misconduct connected with the employee's work).

Center (Employer) to explain her ongoing absence amounted to willful misconduct under the Law. Claimant argues that the Board erred in finding willful misconduct because: (1) although she did not provide a new doctor's note for her ongoing absence, she did contact Employer and request to use vacation time until she could obtain that note; and (2) Employer did not, as it had with other employees, contact Claimant during her absence to see if Claimant intended to return to work. Discerning no error, we affirm.

Claimant worked for Employer from June 23, 2011, until June 29, 2015, with her last position being a full-time animal care attendant. (Referee Decision, Findings of Fact (FOF) ¶ 1.) On June 29, 2015, Claimant was demoted as a result of her work performance. (Id. ¶¶ 2, 3.) On July 2, 2015, Claimant began a leave of absence, for which she provided several doctor's notes to cover that period of time. (Id. ¶ 4; Doctor's Notes, Exs. to Claimant's Questionnaire (Doctor's Notes), R. Item 2.) Claimant's leave of absence "was scheduled to end August 19, 2015," the last day covered by the most recently provided doctor's note. (Id. ¶ 5; Doctor's Notes.) "[C]laimant did not return to work" when scheduled, or contact Employer to "request an extension, or report any further absences." (Id. ¶ 6.) On August 29, 2015, Employer discharged Claimant from her employment effective immediately. (Id. ¶ 7; Employer Separation Information, R. Item 3.) Claimant applied for UC benefits, but was found ineligible under Section 402(e). (Notice of Determination, R. Item 5.) Claimant appealed the Notice of Determination, and the matter was assigned to the Referee for a hearing on October 29, 2015. At the hearing, Employer's Executive Director (Director) and Claimant testified.

Director testified that, until February 2015, Claimant was Employer's full-time operational manager, but that Claimant received a poor employment

2

evaluation for that position and was demoted to animal care specialist. (Hr'g Tr. at 7-8, R. Item 9.) Director stated that, on June 29, 2015, she again met with Claimant to evaluate Claimant's job performance and Claimant was demoted to a different full-time position at a lower salary/hourly rate.[2] (Id. at 8.) According to Director, during that meeting Claimant threatened to take legal action against Employer due to the demotion and lower salary. (Id. at 4.) Director testified that when Claimant left that day, she left behind her work-issued cell phone with its memory deleted and that, following Claimant's two scheduled days off, Employer received a doctor's excuse and note from Claimant requesting 15 paid days off beginning on July 1, 2015. (Id.) Director explained that Employer continued to receive doctor's notes from Claimant via email with no indication of when Claimant would return to work. (Id.) Director stated that Employer received the last doctor's note from Claimant on August 5, 2015, removing Claimant from work for two weeks; therefore, Employer believed Claimant would be returning to her work duties on August 20, 2015. (Id. at 4, 8.) Director stated that Claimant did not return to work on August 20, 2015, and the only communication Employer received from Claimant prior to her discharge was a registered letter, dated August 20, 2015, reiterating a request to be paid for certain holidays that she had worked.[3] (Id.) Director indicated that Claimant never communicated to Employer regarding

---

[2] Director presented two employee evaluations of Claimant that showed, *inter alia*, Claimant having a "very poor attitude and not working well with her superiors . . . customers and co-workers." (Hr'g Tr. at 5; Employee Evaluations, Exs. to Employer's Questionnaire, R. Item 3.)

[3] Director testified that Claimant's assertion that she was entitled to back holiday pay did not correspond with the policy set forth in the copy of Employer's handbook that Director had and, therefore, on July 10, 2015, she sent a letter to Claimant requesting the handbook that Claimant was using as reference. (Hr'g Tr. at 4.)

when, or if, Claimant would return to work from her leave of absence. (Id. at 4.) Director explained that, given the contentiousness of the situation, she did not feel that she should communicate with Claimant. (Id. at 16.) On August 29, 2015, Employer sent Claimant a letter discharging her from her employment for failing to communicate with Employer regarding her intentions to return to work following the end of her leave of absence.[4] (Id. at 4; Discharge Letter, Ex. to Employer's Questionnaire, R. Item 3.)

Claimant testified that following her February 2015 evaluation, she discussed that evaluation with Director in order to determine how she could properly do her job. (Hr'g Tr. at 9.) Notwithstanding her efforts, Claimant stated that Director would not communicate with her about the issue. (Id.) According to Claimant, in May of 2015, Director told her that things were going great, but that at the June 29, 2015, evaluation other members of Employer's Board of Directors made accusations against Claimant that were untrue. (Id. at 9-10.) Claimant acknowledged that she was very upset at that meeting and that she did contact her lawyer for advice. (Id. at 10.) With regard to her doctor's notes, Claimant testified that, on August 19, 2015, her doctor was in an emergency and was unavailable to provide Claimant with a note releasing her to return to work. (Id. at 10.) Claimant indicated that being unable to obtain a note from her doctor, she sent a registered letter to Employer on August 20, 2015, received by Employer on August 21, 2015, requesting the paid vacation time that she believed she was entitled.[5] (Id. at 10-11,

---

[4] Employer's Questionnaire indicated that "when [Claimant's leave of absence] ran out we expected her back, [b]ut rcvd [sic] no notification of her intentions" and "[d]ue to no show, no call we had no chose [sic] but to send discharge letter on 8/29/2015." (Employer Questionnaire at 1.)

[5] Claimant's letter stated:

*(Continued…)*

4

15.) Claimant explained that, by the time she received the doctor's note allowing her to return to work, Employer had already discharged her. (Id. at 10.) Claimant further testified that Employer's normal procedure would be to contact someone who was ill, but that during Claimant's absence, no one from Employer contacted her to see if she was all right. (Id. at 11.) When asked by the Referee why she did not remain in contact with Employer during her absence or advise Employer that she was having difficulty obtaining a doctor's note, Claimant responded that it was a very hostile situation, she thought Employer should have called her, she had sent Employer the doctor's notes, and she sent the certified letter on August 20, 2015, requesting vacation time. (Id. at 12-13, 15.) Claimant subsequently agreed that, according to her doctor's notes, she was expected to return to work on August 20, 2015, and that she "never communicated anything" to Employer even after having difficulty obtaining a new note from her doctor. (Id. at 14.)

---

Requesting my earned holiday pay. I do not have your master copy of employee handbook. A copy was made and given to employees when hired along with all necessary paper work.

Full time employees were allowed to gain after 1 year of employment 1 day for every holiday worked. I worked 4 years, discounting 1 yr − 3 yrs − I worked all but 3 holidays. You paid me on last check for 3 leaving 12. I did not receive any other holiday or vacation pay. Please reply.

Thank you.

Holidays allowed by [Employer]:
New Year's Day               Labor Day
Memorial Day                 Thanksgiving
Fourth of July               Christmas

(Claimant's Ex. C-1.)

5

Based on this evidence, the Referee made the following relevant findings of fact:

1. Beginning June 23, 2011, the claimant was employed full time by [Employer]. The claimant's last position was an animal care attendant with a final rate of pay of $15 per hour. The claimant's last day of work was June 29, 2015.

2. On June 29, 2015, the employer conducted an evaluation in which the claimant was demoted.

3. The demotion was the result of work performance.

4. On July 2, 2015, the claimant commenced a leave of absence.

5. The leave was scheduled to end August 19, 2015.

6. The claimant did not return to work, request an extension, or report any further absences.

7. On August 29, 2015, the employer discharged the claimant.

(FOF ¶¶ 1-7.) The Referee held that an employee must exercise "due diligence in maintaining the employment relationship," which "requires a claimant to report to the employer the reason for any absence and give some indication of claimant's future intentions." (Referee Decision at 2.) According to the Referee, because regular attendance at work is an essential element of the employment relationship, it is "incumbent upon [the] employee, in order to properly maintain the employment relationship, to make every reasonable effort to notify the employer when compelled to be absent from work and to give some indication as to when [the] claimant expects to be able to resume work." (Id.) The Referee concluded that because Claimant did not return to work after her leave of absence ended on August 19, 2015, or attempt to notify Employer of any reasons that were

6

preventing her from returning to work, Claimant's actions fell below the standards Employer had the right to expect from Claimant and that "[C]laimant provided no justification for her decision." (Id.) Therefore, the Referee held that "Employer has met its burden of proof in establishing that the Claimant's discharge from employment was for reasons which rise to the level of willful misconduct in connection with the work and benefits are denied in accordance with Section 402(e) of the Law." (Id.)

On November 12, 2015, Claimant appealed to the Board. (Petition for Appeal, R. Item 11.) The Board affirmed the Referee's Decision, and adopted and incorporated the Referee's findings and conclusions into its Order. (Board Order.) Additionally, the Board held that "[C]laimant asserted that she needed additional time off and had difficulty obtaining medical documentation from her physician; however, she did not communicate this to the employer." (Id.) The Board concluded, therefore, that Claimant had not "justified her failure to return to work upon expiration of her leave." (Id.) Claimant now petitions this Court for review.[6]

---

[6] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." Id. Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." Id. This Court is bound "'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony'" to determine if substantial evidence exists for the Board's findings. U.S. Banknote Co. v. Unemployment Comp. Bd. of Review, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting Taylor v. Unemployment Comp. Bd. of Review, 378 A.2d 829, 831 (Pa. 1977)).

On appeal, Claimant asserts that she did communicate with Employer at the end of her leave of absence by requesting vacation via the August 20, 2015, certified letter, and she reasonably expected a response. However, Employer did not respond because Director felt "uncomfortable" communicating with Claimant. (Claimant's Br. at 7.) Claimant further argues that Employer set a "precedent" of how it treated employee absences and vacations and it did not follow this precedent in her situation. (Id.) Claimant asserts that this precedent provided "time allowances to employees when absent whether they responded or not or regardless of whether they provided any excuse or returned to work" or "even when employees followed no protocol of reporting absences or leaving their positions permanently[,] and [Employer] continued to call, text, or e-mail while no communication was forthcoming." (Id. at 6-7.) Claimant argues that there was no willful misconduct or willful disregard for her job, and that she should be entitled to benefits.

The Board responds that Employer had the right to expect Claimant to notify it of her reasons for failing to return following the end of her leave of absence and that Claimant's failure to do so fell below the standards of behavior Employer could expect from Claimant. Geesey v. Unemployment Comp. Bd. of Review, 381 A.2d 1343, 1344 (Pa. Cmwlth. 1978); Homony v. Unemployment Comp. Bd. of Review, 312 A.2d 77, 78-79 (Pa. Cmwlth. 1973). The Board observes that although Claimant sent the registered certified letter, that letter contained no explanation for Claimant's continued absence and only requested payment for prior holidays that Claimant had worked.

Section 402(e) of the Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which h[er]

8

unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work." 43 P.S. § 802(e).  While the Law does not define "willful misconduct," our Court has defined it to include "a disregard for standards of behavior which an employer can rightfully expect of an employee."  Phila. Parking Auth. v. Unemployment Comp. Bd. of Review, 1 A.3d 965, 968 (Pa. Cmwlth. 2010).  "An employer has a right to expect an employee who is on sick leave to report back to work when cleared to do so by h[er] physician or at least notify h[er] employer of h[er] reasons for failing to return." Geesey, 381 A.2d at 1344; see also Homony, 312 A.2d 78-79.  The failure of an employee to do so demonstrates "a disregard for standards of behavior which the employer has the right to expect of [an] employee[]" and constitutes willful misconduct.  Geesey, 381 A.2d at 1344.  Once the employer meets its burden, the burden shifts to the employee to show good cause for his or her actions. McKeesport Hosp. v. Unemployment Comp. Bd. of Review, 625 A.2d 112, 114 (Pa. Cmwlth. 1993).  "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances."  Docherty v. Unemployment Comp. Bd. of Review, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006).  If a claimant had "good cause for the conduct, it was not willful misconduct."  Rossi v. Unemployment Comp. Bd. of Review, 676 A.2d 194, 198 (Pa. 1996).  Whether a claimant's conduct rose to the level of willful misconduct is a question of law reviewable by this Court.  Docherty, 898 A.2d at 1209.

Here, Claimant took a medical leave of absence during which time she communicated her work status to Employer through a series of doctor's notes removing her from work two weeks at a time.  (Hr'g Tr. at 10, 12-13; Doctor's Notes.)  Claimant acknowledged that based on the last doctor's note she sent to

9

Employer, she was expected to return to work on August 20, 2015, and did not do so. (Hr'g Tr. at 14.) Although Claimant explained that she was having difficulty obtaining a doctor's note on August 19, 2015, she agreed that she "never communicated anything" to Employer about her return to work on August 20, 2015. (Id.) Claimant's registered letter, sent on August 20, 2015, and received by Employer on August 21, 2015, does not, as Claimant asserts, contain a request to take vacation time until she could get a new doctor's note. There is no mention in that letter of Claimant's desire to return to work or that she was having difficulty obtaining a new note from her doctor either keeping her off work for another two weeks or allowing her to return to her position. Rather, the letter requests that Claimant be paid for certain holidays that she had worked in the previous year. Accordingly, Claimant did not "report back to work when cleared to do so by h[er] physician or at least notify h[er] employer of h[er] reasons for failing to return," and, therefore, her actions fell below the "standards of behavior which the employer has the right to expect of [an] employee[]" and constituted willful misconduct. Geesey, 381 A.2d at 1344.

Because Employer met its burden of establishing willful misconduct, the burden shifts to Claimant to demonstrate that she had good cause for her actions or that her actions were justifiable under the circumstances. Docherty, 898 A.2d at 1208-09. Claimant justifies her lack of communication by citing her belief that Employer should have followed its established precedent and contacted her regarding her plans for returning to work rather than discharging her for not contacting Employer. In so arguing, it appears that Claimant is raising the affirmative defense of "disparate treatment," which provides that:

> a claimant who has engaged in willful misconduct may still receive
> benefits if [s]he can make an initial showing that: (1) the employer

10

discharged claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based upon an improper criterion. See Dep['t] of Transp[.] v. Unemployment Comp[.] B[d.] of Review, 755 A.2d 744, 748 (Pa. Cmwlth. 2000) ("[T]he essence of disparate treatment is not only whether unlawful discrimination has occurred but also whether similarly situated people are treated differently, based upon improper criteria.").

Geisinger Health Plan v. Unemployment Comp. Bd. of Review, 964 A.2d 970, 974 (Pa. Cmwlth. 2009). Notably, "[w]hen the employees are not similarly situated, the denial of benefits is appropriate." Id. at 976. "[T]he mere fact that one employee is discharged for willful misconduct and others are not discharged for the same conduct does not establish disparate treatment." Am. Racing Equip., Inc. v. Unemployment Comp. Bd. of Review, 601 A.2d 480, 483 (Pa. Cmwlth. 1991).

Claimant testified that Employer normally would contact the person who was ill, see how the person was feeling, and check if the person was coming back to work.[7] (Id. at 11-12.) Director indicated that, while she would normally contact an ill employee to see how that employee was feeling, she "did not feel that [she] should communicate with [Claimant] because [Claimant's] last words to [Director] were that she was talking to an attorney, so [Director] did not feel comfortable contacting her" and "felt that if [Claimant] did value her job that she would be in communication with us, if she wanted to come back. Otherwise, [Director] assumed she did [not] want to come back." (Id. at 16.) A review of the record reveals no evidence regarding what positions the other employees held with

---

[7] Claimant's factual contentions in her brief regarding Employer giving other employees additional time off or those employees not following call-off protocol were not made during the hearing and, therefore, we cannot consider them here. Pa. Tpk. Comm'n v. Unemployment Comp. Bd. of Review, 991 A.2d 971, 974 (Pa. Cmwlth. 2009).

Employer, whether they were contacted during *lengthy* medical leaves of absence, and whether they had referenced taking legal action against Employer due to a change in their work status prior to taking leave. Without such evidence, we cannot say that Claimant has established that she was similarly situated with Employer's other employees who were not discharged for not contacting Employer during their extended leaves of absence.

Moreover, to the extent that Claimant asserts she did not want to contact Employer during her absence due to the hostile relationship, Claimant did communicate with Employer by submitting her doctor's notes removing her from work via email. Under Geesey and Homony, Claimant had to "maintain *reasonable* communication with [her] employer during a period of prolonged absence," Homony, 312 A.2d at 78 (emphasis added), and to "at least notify . . . [E]mployer of [her] reasons for failing to return," Geesey, 381 A.2d 1344. We conclude that, despite the contentiousness of the situation, Claimant reasonably could have continued her ongoing practice of advising Employer, via email, of her work status and that, as of August 19, 2015, she was having difficulty obtaining a new doctor's note but that she was not returning to work. Thus, we find that Claimant's actions in not communicating with Employer that she was not returning on August 20, 2015, were not justified under these circumstances.

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda L. Staudenmayer,         :
              Petitioner     :
                      :
          v.           :    No. 174 C.D. 2016
                      :
Unemployment Compensation    :
Board of Review,            :
              Respondent   :

# O R D E R

**NOW**, September 30, 2016, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge