IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria J. Daniels Fusco,            :
                    Petitioner     :
                                   :
          v.                       :
                                   :
Unemployment Compensation          :
Board of Review,                   :    No. 2119 C.D. 2016
                    Respondent     :    Submitted: November 3, 2017


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED:  January 3, 2018


          Maria J. Daniels Fusco (Claimant) petitions this Court, pro se, for review

of the Unemployment Compensation (UC) Board of Review's (UCBR) November 17,

2016 order affirming the Referee's decision denying her UC benefits under Section

402(e) of the UC Law (Law).[1]  The issue before the Court is whether substantial

evidence supported the UCBR's determination that Claimant committed willful

misconduct.[2]  After review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e)
(referring to willful misconduct).

[2] Claimant's Statement of Questions Involved lists four issues: (1) whether willful misconduct
led to Claimant's discharge; (2) whether Claimant was aware of any misconduct; (3) whether
accusations against Claimant were true and accurate; and, (4) whether the Referee's findings were
true and accurate.  *See* Claimant Br. at 7.  Because Claimant's issues relate to whether the UCBR's
decision was supported by substantial evidence, we have combined them herein.

Claimant was employed as a part-time Brand Ambassador/Premium Pet Food Specialist by Advantage Sales & Marketing LLC (Employer) from October 2015 to August 7, 2016.[3] Her duties involved promoting a particular dog food brand to customers in local PetSmart stores. Employer trained Claimant and instructed her not to speak with customers regarding other products, and to direct customers with questions about such products to PetSmart employees. On July 24, 2016, when a customer asked if PetSmart carried a particular flea medication, Claimant responded that PetSmart does not carry the brand because it is known to harm animals. On August 7, 2016, Employer discharged Claimant for willful misconduct.

Claimant applied for UC benefits. On August 31, 2016, the Altoona UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed, and a Referee hearing was held on October 7, 2016. On October 13, 2016, the Referee affirmed the UC Service Center's determination, thereby denying Claimant UC benefits due to her willful misconduct. Claimant appealed to the UCBR. On November 17, 2016, the UCBR adopted the Referee's findings and conclusions, and affirmed the Referee's decision. Claimant appealed to this Court.[4]

Initially,

Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in an unemployment compensation case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards

---

[3] Claimant worked 8 to 12 hours on weekends.

[4] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

2

of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted). "If the employer satisfies its burden, the burden shifts to the employee to show that . . . she had good cause for . . . her conduct. 'A claimant has good cause if . . . her actions are justifiable and reasonable under the circumstances.'" *Grand Sport Auto Body v. Unemployment Comp. Bd. of Review*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (citation omitted) (quoting *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006)). Ultimately, "[t]he question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Scott v. Unemployment Comp. Bd. of Review*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014).

> The law is well-established that:

> [T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.[5]

---

[5] This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted).

In the instant case, the basis of Claimant's argument is that substantial evidence did not support the UCBR's decision. Claimant specifically contends that she was not aware of any misconduct, and that the allegations against her and the Referee's findings based thereon, were not true and accurate. This Court disagrees.

Employer's Associate Conduct and Work Rules Policy (Policy), which is part of its larger Associate Handbook and Code of Business Conduct and Ethics (Handbook), specifies that unacceptable employee conduct that could result in discharge includes "job-related conduct reasonably determined by [Employer] to be unacceptable, unprofessional, [or] a reflection of poor judgment . . . ." Certified Record Item 13, Notes of Testimony, October 7, 2016 (N.T.) Ex. E-10. On October 5, 2015, Claimant acknowledged that she received, read and understood Employer's policies. *See* N.T. Ex. 5. Employer's Policy and Claimant's acknowledgement were admitted into the record without objection.

Employer's District Manager Christina Weidner (Weidner), Claimant's immediate supervisor, testified that she trained Claimant after she was hired. Weidner related that Claimant received extensive training on the dog food product she promoted, and on how to engage, qualify, demonstrate and close her discussions regarding that product with PetSmart customers. Weidner specifically recalled instructing Claimant not to speak to customers about any other products, but rather should such an inquiry be made to direct the customers to PetSmart employees. *See* N.T. at 13, 20.

Weidner described that, on June 11, 2016, PetSmart management reported to her that Claimant was being unprofessional in her interactions with customers (*i.e.*, harassing customers by trying to convert them to Employer's product after they had made their selections, and engaging them for too long). *See* N.T. at 15; *see also* N.T. Exs. E-4 at 4, E-8. On June 17, 2016, Weidner conducted in-person coaching with

4

Claimant on remaining professional at work. *See* N.T. at 15; *see also* N.T. Ex. E-4 at 4. On July 24, 2016, PetSmart management again reported to Weidner that Claimant was being unprofessional, not only by engaging PetSmart employees regarding neutering policies, but by informing a customer that the product he/she was looking for would harm his/her pet. *See* N.T. at 10, 15; *see also* N.T. Ex. E-4 at 4. The PetSmart manager did not want Claimant back in the store. *See* N.T. at 10. Weidner notified Claimant that she would be removed from the schedule pending Employer's investigation. Thereafter, Employer notified Claimant that her employment was terminated for willful misconduct.

Claimant confirmed that she had been trained and re-coached by Weidner regarding her Brand Associate duties. She also admitted that, after her June 17, 2016 re-training, she informed a customer that the particular flea product he/she was looking for was known to harm cats. *See* N.T. at 16, 21. Claimant recalled being told during her training not to "bad[-]mouth" other dog food brands, but did not specifically recollect being told not to discuss other products at all. *See* N.T. at 16, 18-19. Claimant explained that she was simply relaying knowledge she gained from her veterinarian. *See* N.T. at 21.

Based upon the evidence, the Referee made the following relevant findings of fact:

> 3. [Employer] trains its ambassadors not to comment on other companies' products.
>
> 4. If a customer has a question about products other than the ones being promoted an ambassador is to direct the customer to a PetSmart employee.
>
> 5. [Claimant] was previously counseled for improper communication with customers.
>
> 6. On July 24, 2016, a customer asked if the store carried a particular brand of flea medication.

5

7. [Claimant] responded that the store does not carry the brand because it is known to harm animals.

8. [Employer] discharged [Claimant] for commenting on other products.

Referee Dec. at 1-2. The Referee concluded:

In the present case, the credible testimony of [Employer] establishes that it has a policy which prohibits employees from commenting on products other than the ones they are promoting. [Claimant] acknowledges that [] she told a customer that a particular brand of flea medication is known to harm animals. [Claimant] does not explain why she did not refer the question to an employee of PetSmart or at least limit her answer to 'yes' or 'no.' Therefore, [Employer] has established that it discharged [Claimant] for actions that constitute willful misconduct connected with the work and benefits will be disallowed under Section 402(e) of the Law.

Referee Dec. at 2.

The issue of whether good cause exists is a factual one for the [UCBR] to resolve. *Wideman v. Unemployment Comp*[.] *B*[*d.*] *of Review, . . .* 505 A.2d 364, 368 ([Pa. Cmwlth.] 1986). 'The [UCBR], as ultimate fact finder, determines the weight and credibility of the evidence and is free to reject even uncontradicted testimony.' *Id.* Here, the [UCBR] adopted the [R]eferee's finding that [Employer's evidence was credible, and] Claimant's testimony . . . was insufficient to establish good cause. It was within the exclusive province of the [UCBR] to make this finding and Claimant cannot impugn it on appeal.

*Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1164 (Pa. Cmwlth. 2013).

Viewing the evidence in the light most favorable to Employer, as we must, we hold that because substantial evidence supported the UCBR's findings and conclusions, the UCBR properly determined that Claimant committed willful misconduct and, thus, she is ineligible for UC benefits under Section 402(e) of the Law.

6

For all of the above reasons, the UCBR's order is affirmed.


_____
ANNE E. COVEY, Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria J. Daniels Fusco,                   :
                         Petitioner   :
                                        :
           v.                                 :
                                        :
Unemployment Compensation                 :
Board of Review,                          :   No. 2119 C.D. 2016
                      Respondent    :

## O R D E R

AND NOW, this 3rd day of January, 2018, the Unemployment Compensation Board of Review's November 17, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge