# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Berkley E. Williams,                    :
                        Petitioner       :
                                         :
            v.                           :
                                         :
Unemployment Compensation                :
Board of Review,                         :    No. 1771 C.D. 2016
                        Respondent       :    Submitted: March 31, 2017


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: August 8, 2017


            Berkley E. Williams (Claimant) petitions this Court for review of the

Unemployment Compensation (UC) Board of Review's (UCBR) September 27, 2016

order affirming the Referee's decision denying him UC benefits under Section 402(e)

of the UC Law (Law).[1]  There are two issues before the Court: (1) whether the UCBR

erred by finding that Temple University Hospital (Employer) met its burden of

proving that Claimant's conduct constituted willful misconduct; and, (2) whether

Employer equally enforced its policy.[2]  After review, we affirm.

            Claimant was employed as a materials handler by Employer beginning

July 30, 1987.  Claimant's employment was subject to a collective bargaining

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

[2] In his brief, Claimant also challenged whether the UCBR's findings of fact are supported by substantial evidence.  However, since that argument was not developed, it is waived.  *See Rapid Pellet v. Unemployment Comp. Bd. of Review,* 707 A.2d 636, 638 (Pa. Cmwlth. 1998) ("Arguments not properly developed in a brief will be deemed waived by this Court.").

agreement (CBA). Article 25 of the CBA specifies that Employer's management has exclusive control over its workforce and is authorized "to establish, revise and maintain and enforce reasonable work standards and schedules, to make . . . and enforce reasonable work rules" and to discipline bargaining unit members accordingly. Reproduced Record (R.R.) at 195a. CBA Article 27 provides that Employer "shall have the right to discharge, suspend or discipline any employee for just cause." R.R. at 196a.

On August 20, 2003, Claimant read and agreed to uphold Employer's Service Excellence Standards (Standards), which required employees to, *inter alia*, "[b]e responsible for [their] own actions." R.R. at 8a; *see also* R.R. at 36a, 42a-43a. Employees are also bound by Employer's Administrative Policies and Procedures contained in the employee handbook, which include its Corrective Action Discipline Policy (Policy), which Claimant received on April 11, 2006. *See* R.R. at 7a, 9a-13a, 36a, 42a-43a.

Employer's Policy describes a progressive procedure whereby discipline is initiated by discussion of a performance improvement plan, then progresses to a written warning/action plan, then to a final written warning, to unpaid one-day suspension and, ultimately, discharge. *See* R.R. at 10a-11a. The Policy further expounds: "Discipline will remain active for twelve (12) months following the most recent discipline and may progress to the next level if further discipline is warranted within the twelve (12)[-]month period. . . ." R.R. at 11a. The Policy prescribes that serious infractions such as "significant unprofessional conduct" (R.R. at 11a), and/or "[g]ross neglect of duties" (R.R. at 12a) may result in immediate discharge. *See* R.R. at 11a.

On January 16, 2016, Claimant was scheduled to work from 2:30 p.m. to 11:00 p.m. However, at approximately 10:15 p.m., Employer's Materials Management Operations Manager Joseph Julia (Julia) observed Claimant outside his

work area playing video games on his cell phone. On January 22, 2016, based upon Claimant's disciplinary history and the Policy, Employer discharged him.

Claimant applied for UC benefits. On January 24, 2016, the Erie UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed. A Referee hearing was held on April 13, 2016. On April 20, 2016, the Referee affirmed the UC Service Center's determination, and denied Claimant UC benefits under Section 402(e) of the Law. Claimant appealed to the UCBR. On June 24, 2016, the UCBR ordered a hearing to "fully develop the record with regard to the merits of the case." R.R. at 109a. A UCBR hearing was held on September 7, 2016. On September 27, 2016, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[3]

Initially,

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in a[] [UC] case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted). "If the employer satisfies its burden, the burden shifts to the employee to show that he . . . had good cause for his . . . conduct. 'A

---

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

3

claimant has good cause if his . . . actions are justifiable and reasonable under the circumstances.'" *Grand Sport Auto Body v. Unemployment Comp. Bd. of Review*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (citation omitted; quoting *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006)). Ultimately, "[t]he question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Scott v. Unemployment Comp. Bd. of Review*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014).

Claimant first argues that the UCBR erred by finding that Employer met its burden of proving that Claimant's conduct constituted willful misconduct. Claimant specifically contends that "Employer never produced any written work rule that prohibited [Claimant] from being outside his work area and/or from playing a game on his personal cell phone." Claimant's Br. at 12. However, the law is clear that

> '[**a**]**n employer need not have an established rule where the behavioral standard is obvious and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result**.' *Biggs v. Unemployment Comp. Bd. of Review, . . .* 443 A.2d 1204, 1206 n. 3 ([Pa. Cmwlth.] 1982). This Court has held that '[a] finding of willful misconduct **does not hinge on an employee's intent to wrong his employer**; such a finding **may be based on an employee's conscious indifference** to the duty owed his employer.' *Grigsby v. Unemployment Comp. Bd. of Review, . . .* 447 A.2d 705, 707 ([Pa. Cmwlth.] 1982).

*Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 562-63 (Pa. Cmwlth. 2012) (emphasis added).

At the Referee hearing, Julia testified that, as of January 16, 2016, Claimant's employment record contained discipline reports including an April 20, 2015 final written warning (*see* R.R. at 6a), and an April 30, 2015 one-day

4

suspension (*see* R.R. at 5a).[4]  R.R. at 43a.  Despite that Claimant did not sign the disciplinary reports, he acknowledged that he received them.  *See* R.R. at 50a.

Julia described that while he was on call on Saturday, January 16, 2016, he stopped in at Employer's facility to make sure things were running smoothly.  *See* R.R. at 46a.  Julia recounted that, at approximately 10:15 p.m., when Claimant should have been "[e]ither servicing floors [or] patient areas with linens, or in the linen department [(Linens)]," he observed Claimant in Employer's central supply area (Central Supply) playing a video game on his cell phone for approximately 5 minutes.  R.R. at 40a; *see also* R.R. at 46a.  He recollected that Claimant did not answer when he asked Claimant why he was there, but rather Claimant "put his head back down and went about playing on his phone."  R.R. at 40a; *see also* R.R. at 41a.

Julia explained that when he approached Claimant about the incident on Tuesday, January 19, 2016,[5] Claimant told him that he was in Central Supply because another employee had asked him for assistance in getting a sporting event on a computer there.[6]  *See* R.R. at 40a, 44a-45a, 53a.  Julia noted that since Claimant reported taking his break at approximately 6:30 p.m. that night, Claimant was not on a break when he was observed in Central Supply.  *See* R.R. at 42a.  Julia further testified that material handlers, like Claimant, who finish their assigned work duties before their shifts end are to notify supervisory staff and ask if there is anything else to be done, which, to his knowledge, Claimant did not do on January 16, 2016.  *See* R.R. at 44a.

---

[4] According to the record, Claimant's discipline reports to that point included an August 5, 2011 written warning (*see* R.R. at 75a), a December 27, 2011 initial discussion (*see* R.R. at 76a), a November 15, 2012 written warning (*see* R.R. at 74a), a June 6, 2013 final written warning (*see* R.R. at 73a), and an August 26, 2013 one-day suspension (*see* R.R. at 72a).  *See* R.R. at 48a.

[5] Claimant worked Sunday, January 17, 2016, but was off Monday, January 18, 2016.  *See* R.R. at 53a.

[6] The record reveals that it was not Employer's computer.  *See* R.R. at 40a.

5

Julia acknowledged that there is a closed-circuit camera covering the dirty linen chute room, from which Central Supply employees can monitor the room during times when there is no material handling staff coverage from 11:00 p.m. until 7:00 a.m.[7] *See* R.R. at 44a. Julia recounted that, notwithstanding Claimant's potential ability to monitor his job from Central Supply on January 16, 2016, Claimant admitted that he was not performing his job duties when Julia saw him on January 16, 2016. *See* R.R. at 45a.

Julia clarified that each year an employee goes without discipline, the last disciplinary step gets cleared, and department supervisors have the discretion when the next discipline occurs to either maintain the employee at that level or progress him to the next level.[8] *See* R.R. at 49a-50a. Julia explained that he suspended Claimant on January 19, 2016.[9] *See* R.R. at 45a, 53a. On January 22, 2016, Julia issued a disciplinary report discharging Claimant for violating the personal accountability portion of Employer's Standards, and for "[f]ail[ing] to meet

---

[7] Julia added that Linens has a similar monitor that employees can watch while they are on the clock. *See* R.R. at 44a, 64a-65a.

[8] Article 1, Section 1 of the CBA states: "All minor infractions on an employee's record shall be cleared after one year, provided that the one[]year shall be free of infractions." R.R. at 107a, 195a. Neither the CBA nor the Policy define the term "minor infractions." *Id.*; *see also* R.R. at 136a.

[9] We acknowledge Julia's explanation that he had the discretion to terminate Claimant's employment as follows:

> [T]his [January 16, 2016] incident warrants the next step as one[-]day suspension. But it's up to the discretion of the department[.] . . . [B]ecause it was over a year, I could keep him at the same level and not progressively discipline him. So what we chose to do, even though he was at suspension again, we cut him at the same level of final written warning April 2015.

R.R. at 50a; *see also* R.R. at 131a. However, since Claimant's last infraction – a one-day suspension – occurred on April 30, 2015, any further policy violation before April 30, 2016 could result in termination of Claimant's employment. Accordingly, Employer was authorized under the Policy to discharge Claimant on January 19, 2016, rather than suspend him.

6

performance standards" and "[n]eglect of duties" pursuant to the Policy. R.R. at 4a; *see also* R.R. at 45a.

Claimant acknowledged at the Referee hearing that he went to Central Supply on January 16, 2016 at approximately 10:00 p.m. to assist a co-worker in getting a sporting event on the co-worker's computer and, after Claimant did so, he "was just passing the time for a minute" playing a game on his cell phone since his work "was caught up" and he could answer calls and his beeper, and fulfill his last duty of his shift – monitoring the dirty linen chute – from that area. R.R. at 51a; *see also* R.R. at 54a, 57a. Claimant further stated that Linens was only a "10 second walk" from Central Supply (*see* R.R. at 56a). He admitted that Julia asked Claimant a question (although he could not recall what Julia asked) and then watched Claimant (for two minutes not five minutes) while he "played a little bit, closed the game down and [] left." R.R. at 53a. Claimant recollected that he returned to Linens and cleaned out the chutes before the end of his shift. *See* R.R. at 54a, 56a.

Claimant declared that he "never [] heard of any rule where you weren't allowed to go to another section at any particular time" (R.R. at 51a; *see also* R.R. at 55a-56a), nor has anyone told him that he was not allowed to play a game on his phone (*see* R.R. at 57a). He claims that he has "[a]lmost daily" witnessed other employees on their phones, listening to music, playing games, watching TV and checking the Internet (R.R. at 57a; *see also* R.R. at 58a), and that "[t]he understanding is that you're allowed to use your cell phone at work . . . as long as you have only one earphone in." R.R. at 57a.

Claimant asserted that he did not know why he was suspended, since "all [he] was doing was just sitting there. [His] work was completed." R.R. at 53a. However, it is unclear whether Claimant told Julia, either when the incident occurred on January 16, 2016 or when they met on January 19, 2016, that he had completed his work before he left Linens and was on his phone. *See* R.R. at 53a-54a, 63a.

7

Claimant first testified that since the union delegate was present when he and Julia met, "there's no sense in trying to fight it." *See* R.R. at 53a; *see also* R.R. at 66a. Claimant later asserted: "I was under the assumption that [Julia] knew that I would not leave my job or be sitting down unless I had finished all my assignments." R.R. at 54a. Thereafter, he maintained: "I believe that I explained it to [Julia]." R.R. at 54a; *see also* R.R. at 55a. Notwithstanding, Claimant agreed that he could have helped his co-worker after his shift ended. He further testified:

> [Employer's Representative (ET)] . . . [W]ould [you] agree with me that your work shift, and it was testified that you're making $20 an hour – that's what [Employer] is paying you to do your work -- that it's a normal expectation for [] Employer that until your shift ends, **you're getting paid for your time and that you should be performing work for the time you're being paid? That's a normal expectation, wouldn't you think?**
>
> [Claimant (C)] **Yes**.
>
> ET Okay. But in fact that night at 10:15 **when [Julia] was observing you, you weren't performing any work duties and you weren't in the assigned work area** where you were performing your duties earlier in your shift from 2:00 in the afternoon, correct?
>
> C **No**.

R.R. at 64a (emphasis added). Finally, Claimant stated his understanding that if an employee did not have any disciplinary actions against him for one year, "everything . . . reverts back to zero[,]" rather than back to the last progressive step. R.R. at 65a.

Based upon the evidence, the Referee concluded that Employer established that Claimant's conduct on January 16, 2016 was contrary to the type of behavior an employer has the right to expect of an employee, and that Claimant did not provide any reasonable justification therefor. *See* Referee Dec. at 3. However, the law is well established that "the [UCBR] is the ultimate fact-finder in

8

unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence." *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). Accordingly, having determined that additional facts were necessary to decide the merits of this case, the UCBR ordered the September 7, 2016 hearing.

At the September 7, 2016 UCBR hearing, Julia testified that Employer's policy prohibiting the use of cell phones to play games during work hours was available to Claimant on the employee website, to which Claimant had access. *See* R.R. at 123a, 128a. When asked: "[D]id you ever inform or indicate to [Claimant] that once his work[ was] finished[,] he can do pretty much what he wants?" Julia responded: "No, I don't recall saying that." R.R. at 167a. Julia recalled issuing verbal warnings to employees, including Claimant, for using computers at work for non-work purposes, and declared that the other employees did not repeat that behavior thereafter. *See* R.R. at 137a-139a.

Julia defined the phrase minor infraction used in the CBA as "something that does not directly affect patient care," such as when an employee is a little bit late, or leaves a work area messy. R.R. at 136a; *see also* R.R. at 134a-135a. Julia declared that since Claimant's record was not clean for the year leading up to the January 16, 2016 incident, and his prior infractions involved patient care and, thus, were not minor, he was discharged in accordance with Employer's Policy and the CBA. *See* R.R. at 123a, 129a-131a, 135a-136a. Julia was not aware of Claimant grieving or contesting his disciplinary level. *See* R.R. at 144a.

Claimant reiterated at the UCBR hearing that the only cell phone restriction of which he was aware was that employees use only one earpiece, so that they could hear overhead pages. *See* R.R. at 160a. He also maintained that his understanding, under the circumstances, was that as "long as your work is completed[,] what you do in the meantime is your concern." R.R. at 165a; *see also*

9

R.R. at 166a. Claimant repeated that he did not raise the common practice of employee cell phone use when Julia confronted him because it would not have changed the outcome. *See* R.R. at 163a, 165a-166a.

Based upon all of the evidence presented, the UCBR affirmed the Referee's decision denying Claimant UC benefits finding, in pertinent part:

> 2. [Employer's CBA] provides that all minor infractions on an employee's record shall be cleared after one year provided that the one year shall be free of infractions.
>
> . . . .
>
> 4. [Employer's] policy prohibits employees from using [Employer's] cell phones for personal use.
>
> 5. [Claimant] was or should have been aware of the [CBA] and [Employer's] cell phone policy.
>
> . . . .
>
> 12. On June 7, 2013, [Claimant] received a final written warning for putting incorrectly[-]sized scrubs in the assigned slots, leaving a linen cart empty, and not properly filling two other carts.
>
> 13. On August 26, 2013, [Claimant] received a one-day suspension for improperly loading the scrub machine.
>
> 14. On April 20, 2015, [Claimant] received a final written warning for not picking up dirty linens and not supplying two locations with clean linens.
>
> 15. [Claimant] did not receive a suspension because the August 26, 2013 one-day suspension and the June 7, 2013 final written warning were cleared as it had been over one year since [Claimant] committed the minor infractions.
>
> 16. On April 30, 2015, [Claimant] received a one-day suspension for improperly placing blankets on supply carts.
>
> 17. On January 16, 2016, [Claimant] was scheduled to work from 2:30 p.m. to 11:00 p.m.

10

18. At approximately 10:15 p.m.[,] [Employer] discovered [Claimant] in [Central Supply] playing a video game on his cell phone instead of being in his assigned work area either supplying the patients with linen or working in [Linens].

19. On January 22, 2016, [Claimant] was discharged for being out of his work area, on the phone, and playing a video game when he should have been working.

20. [Claimant] admitted that he was not on break at the time that he was discovered being out of his work area, on the phone, and playing a video game.

21. The employer cleared the 2013 suspension and final warning, but did not clear the 2011 initial discussion, the 2011 written warning, and the 2012 written warning prior to [Claimant's] discharge.

UCBR Dec. at 1-3. The UCBR reasoned:

> **The [UCBR] resolves the conflicts in the testimony and/or evidence**, in relevant part, **in favor of [Employer] and finds [Employer's] testimony and/or evidence to be credible**.
>
> . . . .
>
> [**Employer**] **has met [its] burden**. On numerous occasions during his employment [Claimant] was disciplined for violating known and reasonable [Employer] policies by failing to perform and/or failing to properly perform his job duties.
>
> The incident which led directly to [Claimant's] discharge occurred on January 16, 2016, when [Employer] discovered [Claimant] in [Central Supply], out of his assigned work area, playing a video game on his cell phone instead of performing his job duties.
>
> [**Claimant**] **did not provide [Employer] or the [UCBR] any reasonable justification** for why he was out of his area playing a video game on his cell phone instead of performing his job duties, especially in light of the fact that on numerous previous occasions [Claimant] was disciplined for failing to perform his job duties.

> **[Claimant's] behavior on January 16, 2016, was not in [Employer's] best interests and contrary to the type of behavior that an employer has the right to expect of an employee**. The [UCBR] is constrained to decide that [Employer] has met its burden of proving that [Claimant] committed willful misconduct, thereby rendering himself ineligible for benefits in accordance with Section 402(e) of the Law.

UCBR Dec. at 3-4 (emphasis added).

> It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. **Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal**.

*Ductmate Indus., Inc.*, 949 A.2d at 342 (citation omitted; emphasis added). This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the [e]mployer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

In the instant case, after a thorough review of the record, with the exception of Finding of Fact 4, substantial evidence supported the UCBR's factual findings.[10] Specifically, **it is undisputed that Claimant was out of his assigned**

---

[10] Finding of Fact 4 references employee use of *Employer's* cell phones. However, the record is clear, based on the testimony, that the references were to employees' *personal* cell phone use. *See* R.R. at 152a, 206a. Moreover, it is not evident whether Employer maintained a documented cell phone use policy. Under the circumstances, Finding of Fact 4 is not supported by substantial evidence and, therefore, must be stricken. However, since the UCBR did not decide this case based on a rule violation, but rather upon behavior that an employer has the right to expect of

**work area socializing and playing video games on his cell phone during scheduled work hours on January 16, 2016**. This Court has held that "[p]oor work performance reflecting an **unwillingness to work to the best of one's ability is indicative of a disregard for the standard of conduct an employer has a right to expect** and may rise to the level of willful misconduct." *Gardner v. Unemployment Comp. Bd. of Review*, 454 A.2d 1208, 1209 (Pa. Cmwlth. 1983) (emphasis added). "It is also clear that **an employee who** neglects assigned work, **engages in personal pursuits during working hours, and has received multiple warnings is guilty of willful misconduct**." *Astarb v. Unemployment Comp. Bd. of Review*, 413 A.2d 761, 763 (Pa. Cmwlth. 1980) (emphasis added). This Court has specifically held that **time spent on non-work activities during work hours, including playing computer games, "reflects an unwillingness to work to the best of one's ability and demonstrates a conscious disregard for the standards of behavior which an employer has a right to expect from an employee."** *See Hance v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 1920 C.D. 2008, filed June 18, 2009), slip op. at 8 (emphasis added).[11] Because Claimant's actions on January 16, 2016 were clearly contrary to the standards of conduct Employer could expect from him, Claimant's conduct constituted willful misconduct.

We acknowledge that "[t]he employee's conduct will not constitute willful misconduct if it was justifiable under the circumstances, since it cannot then be considered to be in disregard of conduct the employer has a right to expect." *Eisenhauer v. Unemployment Comp. Bd. of Review*, 467 A.2d 650, 652 (Pa. Cmwlth.

---

an employee, Finding of Fact 4 was not a necessary finding and its absence does not impede affirmance when the other findings are otherwise proper. *See Sargent v. Unemployment Comp. Bd. of Review*, 630 A.2d 534, 536 (Pa. Cmwlth. 1993) ("[T]his finding is unsupported by the record and must be stricken. . . . [H]owever, [] it is unnecessary to support the [UCBR's] determination.").

[11] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Hance* is cited in this instance for its persuasive value.

1983). However, in the instant matter, the UCBR deemed credible Julia's testimony that if Claimant finished his work before his shift concluded, he was to contact a supervisor to inquire what else needed to be done. The UCBR did not find credible Claimant's conflicting testimony that he was permitted to socialize out of his area and play video games on this cell phone during work hours as long as he felt his work was finished.[12] Accordingly, there is substantial evidence that the time Claimant spent playing video games on his cell phone in Central Supply on January 16, 2016, when he had a history of poor job performance and he did not contact management to see what other work could be done, reflected Claimant's unjustified disregard for standards of behavior Employer expected from him.

Because Employer met its burden of proving that "[Claimant's] behavior on January 16, 2016, was not in [Employer's] best interests and contrary to the type of behavior that an employer has the right to expect of an employee," and Claimant did not meet his burden of proving good cause, we hold the UCBR properly held that Claimant was ineligible for UC benefits under Section 402(e) of the Law. UCBR Dec. at 4.

Claimant next contends that the UCBR erred by finding that Claimant's conduct amounted to willful misconduct because Employer did not equally enforce its policy. Essentially, he asserts that Employer had no right to expect he would not be playing on his cell phone outside his work area during work hours, when other employees have done it without disciplinary action being taken against them. We disagree.

"We are well aware that a finding of willful misconduct cannot be upheld where the employer has applied different standards of behavior to different

---

[12] We do not find compelling Claimant's argument that he was simply biding his time until he could retire in July 2016, particularly when he was aware that he was a single disciplinary step away from Employer terminating his employment.

14

employees." *Sommers v. Unemployment Comp. Bd. of Review*, 424 A.2d 619, 621 (Pa. Cmwlth. 1981). However, at the Referee hearing, Julia described that Employer uniformly applies its Standards and the Policy and, thus, **employees would be dealt with differently for similar violations only if they were in different stages of their individual progressive disciplinary process**. *See* R.R. at 43a.

Claimant asserted that he observed other employees during work hours in areas where they were not assigned for non-work purposes several times per week, but those employees were not disciplined or discharged. *See* R.R. at 57a. Claimant also reported that he has witnessed other employees use their cell phones and even Employer's computers to access Internet websites to check wedding photos (at a supervisor's request), Facebook, movie sites and news for purposes unrelated to their work, yet not face discipline for doing so. *See* R.R. at 58a.

At the UCBR hearing, Claimant testified that he has observed Employer's Materials Handler Kevin Wright (Wright) checking his lottery numbers and taking calls from bill collectors on his cell phone at work, and "almost daily" watching YouTube and television in the waiting room. R.R. at 158a; *see also* R.R. at 157a-158a. He also claims to have seen Employer's Materials Manager William Vandermark (Vandermark) watch movies and music videos on Employer's computer during "every shift he works . . . the desk." R.R. at 159a. Claimant declared that an employee named Pam also listens to music on Employer's computer while she works. *See* R.R. at 159a. He recounted that another employee watches the news daily at 6:30 a.m. before she goes home. *See* R.R. at 160a. Claimant reported that approximately seven Linen employees chipped in and purchased speakers "[s]o [they could] get more . . . quality sound out of the computer off the [I]nternet." R.R. at 159a; *see also* R.R. at 160a. Claimant asserted that everyone in the department and Linens engage in nonwork-related activities during work hours from time to time. *See* R.R. at 160a. He contended that this behavior was done in the open, no attempts were made to hide

15

it from management; and, in fact, Julia and Employer's Materials Management Supervisor Akeem Stoner (Stoner) witnessed it and did not tell employees to stop. *See* R.R. at 161a, 166a.

Julia admitted that although he has disciplined others for being outside their work areas, Claimant is the only employee he has disciplined for being outside his area playing games on his cell phone. *See* R.R. at 127a, 141a. He further declared that neither Claimant nor anyone else has reported to him that employees are either using their cell phones or are out of their work areas for non-work purposes, and he was not aware that other employees were committing the infractions Claimant alleged. *See* R.R. at 65a, 127a. Julia nevertheless reiterated that he treats all of his employees fairly and in the same manner. *See* R.R. at 124a. Julia does not recall Claimant informing him that he was unfairly disciplined, or of any employee complaining to human resources or the union about such treatment. *See* R.R. at 124a.

When asked whether employees are treated unfairly in terms of discipline, Vandermark said: "Not really." R.R. at 146a. Wright did not believe that supervisors treat certain employees differently, and declared that Claimant has never complained to him about differential treatment by management. *See* R.R. at 150a. Stoner could not state that certain employees are permitted to get away with things when others are not, and he could not recall Claimant ever complaining to him about disparate treatment. *See* R.R. at 153a. Accordingly, Claimant's witnesses, Vandermark, Wright and Stoner, did not support Claimant's disparate treatment claim.

Based upon the record evidence, the UCBR found:

22. [Employer] has disciplined other employees for being out of their work area.

23. [Claimant] was not subject to disparate treatment; employees that were at the same level of discipline were

16

> disciplined in accordance with the same policies that were applied to [Claimant].

UCBR Dec. at 3. We agree that Claimant failed to establish that he was treated differently than similarly-situated employees. Specifically, Claimant failed to demonstrate that his conduct on January 16, 2016 was simply part of the established culture in Julia's department, that Julia was aware of it, or that Julia treated Claimant more harshly than others. In fact, Claimant did not produce any evidence of the disciplinary status of other employees by which a comparison could be made. Under the circumstances, since the UCBR's findings were based on substantial record evidence, they are conclusive on appeal and we will not disturb them. *Ductmate Indus., Inc.* Because Claimant could not justify his January 16, 2016 actions based on other employees' engaging in similar conduct, the UCBR properly held that Claimant was ineligible for UC benefits under Section 402(e) of the Law.

Accordingly, where, as here, Employer met its burden, but "Claimant did not meet his burden of proving either that his conduct was not contrary to reasonable standards of behavior which [Employer] may expect or that the [standard] was not uniformly enforced[,]" we affirm the UCBR's order. *Smith v. Unemployment Comp. Bd. of Review*, 508 A.2d 1281, 1283 (Pa. Cmwlth. 1986).


_____
ANNE E. COVEY, Judge

Judge Cosgrove dissents.

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Berkley E. Williams,            :
                Petitioner     :
                        :
           v.             :
                        :
Unemployment Compensation   :
Board of Review,           :    No. 1771 C.D. 2016
               Respondent   :

## O R D E R

AND NOW, this 8th day of August, 2017, the Unemployment Compensation Board of Review's September 27, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge